IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE                                    :    CHAPTER 13

    JAMES C. FAIRFIELD,              :

        DEBTOR.                       :    BANKRUPTCY NO. 10-10723-MDC

## MEMORANDUM

BY:  MAGDELINE D. COLEMAN, UNITED STATES BANKRUPTCY JUDGE

**INTRODUCTION**

      Before this Court for consideration are debtor James C. Fairfield's (the "Debtor") objections to two proofs of claim filed by American Express Bank, FSB ("American Express") for unpaid credit cards debts incurred in connection with the Debtor's use of corporate credit cards maintained by his medical practice.  The Debtor objects to the Claims on the ground that he has no direct contract liability for the unpaid debts.

      Following an evidentiary hearing and having considered the issues raised by the parties at the hearing and in their post-hearing filings, this Court finds that American Express has met its burden with regard to the Debtor's direct contractual liability.  On this basis, the Debtor's objections will be denied.

**FACTUAL AND PROCEDURAL BACKGROUND**[1]

      On January 29, 2010, the Debtor commenced a chapter 13 bankruptcy case.  On March 2, 2010, the Debtor filed his schedules.  On his Schedule F, he listed several creditors as holding unsecured nonpriority claims.  Among the claims listed on his Schedule F, the Debtor identified a claim in the amount of $41,586.28 arising from a debt owed to American Express and a claim in the amount of $17,505.02 arising from a debt owed to American Express Small Business.  Both claims were listed as

---

[1] The discussion below constitutes the Court's findings of facts and conclusions of law as required by Fed. R. Civ. P. 52 made applicable to this matter by Fed. R. Bankr. P. 7052.

contingent.

The amounts listed by the Debtor in his Schedule F are consistent with the proofs of claim filed by American Express. On February 9, 2010, American Express timely filed two unsecured proofs of claim. The first proof of claim, designated as Claim Number 3 on the Claims Register, evidences a claim in the amount of $41,586.28 arising from unpaid credit card debt incurred pre-petition in connection with the use of a credit card account number ending in 1004 ("Claim No. 3"). The second proof of claim, designated as Claim Number 4 on the Claims Register, evidences a claim in the amount of $17,505.02 arising from unpaid credit card debt incurred pre-petition in connection with the use of a credit card account number ending in 1005 ("Claim No. 4," collectively with Claim No. 3, the "Claims"). Both Claims attached identical copies of a "Business Cash Rebate Credit Card Agreement" as well as copies of each account's current account statement.

The Debtor opened the credit card accounts on or about January 2005 and September 2006. The parties agree that he opened the accounts in his capacity as the authorizing officer of Central Montgomery Dermatology Associates, LLC ("CMDA"), the Debtor's medical practice, and not in his individual capacity. However, the Debtor does not possess and American Express is unable to produce copies of the original account agreement due to the age of the accounts. Pursuant to American Express' standard business procedures, American Express periodically provided to the Debtor revised account agreements. In connection with its Claims, American Express relies upon the October 2006 account agreement entitled "Business Cash Rebate Credit Card Agreement" that was attached as Exhibit A to the Claims (the "Account Agreement").[2] The Debtor has not disputed his receipt of the Account Agreement in connection with his use of both accounts. However, the Debtor argues that the subsequent revisions are not effective against him because he never signed the revised Account Agreement. The Account Agreement provides and the parties do not contest that it shall be governed by the laws of the State of Utah.

---

[2] At the September 9, 2010 hearing, counsel for American Express entered into the record a copy of the Account Agreement along with several copies of account statements for each credit card. Counsel for the Debtor did not object to their admission.

2

On June 17, 2010, the Debtor filed an Objection to Claim No. 3 and an Objection to Claim No. 4 (collectively, the "Objections"). In both Objections, the Debtor asserts that the debts are not owed by him individually. Rather, the Debtor argues that CMDA is solely liable for the debts. In a response dated August 20, 2010 [Docket No. 56] (the "Response"), American Express asserts that by virtue of the express terms of its account agreements, the Debtor is personally liable for the underlying debts even though the debts were incurred in his capacity as an officer of CMDA. American Express argues that the express terms of its account agreements impose upon the Debtor personal liability for any debts incurred as a result of the respective credit card accounts.

In furtherance of its consideration of the Objections and the Response, this Court held a hearing on September 9, 2010, to address the parties' respective arguments. At the close of the hearing, this Court requested that the parties provide post-trial briefing addressing the Debtor's liability. Both parties have since completed their post-trial briefing. The Debtor submitted a Memorandum in Support of its Objections (the "Debtor's Post-Trial Memorandum"). In the Post-Trial Memorandum, the Debtor argued that American Express's admission that the Debtor had opened the accounts in his capacity as CMDA's authorizing officer precluded a finding of personal liability.

On the same day as the Debtor filed the Debtor's Post-Trial Memorandum, American Express filed a Memorandum of Law in Support of its Response to the Debtor's Objections (the "American Express Post-Trial Memorandum"). In the American Express Post-Trial Memorandum, American Express argued that its claims are entitled to *prima facie* validity pursuant to F.R.B.P. 3001(c) and (f) and that the Debtor had failed to overcome this presumption. In the alternative, American Express argued that the Debtor is bound by the respective cardholder agreements that, by their express terms, establish that the Debtor, regardless of his status of an officer of CMDA, is personally liable for the debts underlying each of the Claims.

3

**LEGAL DISCUSSION**

I. **The Parties' Respective Burdens**

Allowance of a proof of claim is governed by 11 U.S.C. § 502(a) and Federal Rule of Bankruptcy Procedure 3001(f). The Third Circuit has defined each party's respective burden in proof of claim litigation.

> The burden of proof for claims brought in the bankruptcy court under 11 U.S.C.A. § 502(a) rests on different parties at different times. Initially, the claimant must allege facts sufficient to support the claim. If the averments in his filed claim meet this standard of sufficiency, it is '*prima facie*' valid. In other words, a claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward. The burden of going forward then shifts to the objector to produce evidence sufficient to negate the *prima facie* validity of the filed claim. It is often said that the objector must produce evidence equal in force to the *prima facie* case. In practice, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence. The burden of persuasion is always on the claimant.

*In re Allegheny Int'l Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992) (citations omitted).

Here, the parties do not dispute whether American Express executed and filed the Claims in accordance with its Rule 3001(f) burden by filing the Claims with a copy of the Account Agreement and a copy of each account's current account statement. *See* Fed. R. B. P. 3001(c) (stating that "when a claim … is based on a writing, the original or duplicate shall be filed with the proof of claim."). Instead, the Debtor's Objections attempt to negate the *prima facie* validity of the Claims. The Debtor argues that he is not personally liable for the Claims because he executed the original account agreements in his capacity as an officer of CMDA.

This Court finds that the Debtor's Objections are sufficient to refute the Claims' initial validity. *See In re Martin*, 413 B.R. 12, 15 (Bankr. D.N.H. 2008) (finding evidence that creditor's claim was against a non-debtor entity that maintained a separate corporate existence to be sufficient to shift the burden to the creditor to prove its claim by a preponderance of the evidence); *In re Garberg*, Bky. No. 05-19589, 2006 WL 1997415, at *3 (Bankr. E.D. Pa. Jun. 7, 2006) (finding that debtor's argument that he never signed a credit card account application to be sufficient to rebut *prima facie* validity of credit card

4

issuer's claim). Therefore, the burden rests with American Express to prove its Claims by a preponderance of the evidence. This Court will now consider whether American Express met its burden with regard to proving that consistent with applicable Utah law contractual liability extends to the Debtor personally.

## II.  **Effect of the Account Agreement on the Debtor's Personal Liability**

The Debtor does not dispute the amount of the Claims. Rather, the Debtor's only argument is whether, as a matter of law, he may be held personally liable. The Debtor argues that because the original account applications are the only documents signed by the Debtor and that those applications were signed by the Debtor in his capacity as an officer of CMDA, he may not be held personally liable for the underlying debts. Unfortunately for the Debtor, his argument is not supported by the weight of authority addressing this issue.

Typically, a corporate officer may not be held liable for debts arising from a contract between the corporation and a third party unless the officer expressly assumes individual liability. *See Param Technologies, Inc. v. Intelligent Home Solutions, Inc.*, Civ. No. 04-1348, 2005 WL 2050446, at *6 (E.D. Pa. Aug. 25, 2005*); Leslie v. Phila. 1976 Bicentennial Corp.*, 332 F.Supp. 83, 93 (E.D.Pa. 1971). Here, the applicable Account Agreements contained express language extending to the Debtor liability for the debts in his individual capacity. Cases from other jurisdictions generally have found the individual to be bound by the agreement if the contract includes a clause extending liability to all persons named on the card or to whom the card issuer issued the card. *Heighes v. JP Morgan Chase Bank, N.A.*, 521 F.Supp.2d 641, 647 (N.D. Oh. 2007) (despite signing the credit card agreement in his corporate capacity, holding language in corporate credit card agreement was sufficient to render arbitration clause enforceable against the party personally); *see also Baker v. American Express Travel Related Servs. Co Inc*., Civ. No. 02-26, 2002 WL 1205065, at *2 (W.D. Ky. May 28, 2002) (finding that American Express extended credit to individual personally by virtue of individual's use of corporate credit card); *In re Adams*, Bky. No. 03-30172, 2007 WL 1702511 (Bankr. M.D. Ala. Jun. 11, 2007) (finding debtor personally liable for charges incurred with corporate credit card); *In re Garberg*, Bky. No. 05-19589, 2006 WL 1997415, at *2 (Bankr.

E.D. Pa. Jun. 7, 2006) (concluding that husband is liable for credit card charges relating to account taken out by his wife with cards issued in both spouses' names).

Such principles are consistent with the Utah law – the law governing the agreements. Utah Code §25-5-4(2)(e) provides that an unsigned credit card agreement may be enforced against the user of a credit card who has been provided a written copy of the agreement and the written agreement provides that use shall constitute acceptance.[3] In addition, contrary to the Debtor's arguments, Utah law explicitly provides that liability may attach even if a party fails to sign a credit agreement. *MBNA America Bank, N.A. v. Goodman*, 140 P.3d 589, 592 (Utah App. 2006) (holding that "The Utah Statute of Frauds expressly provides that credit agreements like the one at issue here are enforceable without the signature of the debtor"). American Express alleges and the Debtor does not dispute that he was provided with a written copy of the Account Agreement. The Account Agreement provides that use of the credit cards shall constitute acceptance of the terms of the Account Agreement, and that the he used the cards associated with each account after the issuance of the Account Agreement. By incurring charges, he necessarily assented to the terms of the Account Agreement regardless of whether he physically signed each subsequent revision. *See Eze v. JP Morgan Chase Bank, NA*, Civ. No. 09-2722, 2010 WL 3189813, at *7 (E.D.N.Y. Aug. 11, 2010) (observing that "use of the credit card, whether signed or unsigned, by 'you' or 'anyone authorized by you' creates a binding agreement."); *In re Garberg*, Bky. No. 05-19589, 2006 WL 1997415, at *3 (Bankr. E.D. Pa. Jun. 7, 2006). Therefore, the only issue for this Court to decide is whether liability attached to the Debtor personally.

---

[3] Utah Code § 25-5-4(2)(e)(2010) states in relevant part:

> (e) A credit agreement is binding and enforceable without any signature by the party to be charged if:
> (i) the debtor is provided with a written copy of the terms of the agreement;
> (ii) the agreement provides that any use of the credit offered shall constitute acceptance of those terms; and
> (iii) after the debtor receives the agreement, the debtor, or a person authorized by the debtor, requests funds pursuant to the credit agreement or otherwise uses the credit offered.

Utah Code § 25-5-4(2)(e).

6

In relevant part, the Account Agreement reads:

> **Welcome to American Express Cardmembership**
>
> … When you keep, sign or use the Business Card issued to you (including any renewal or replacement Business Cards), or you use the account associated with this Agreement (you "Card Account"), you agree to the terms of this Agreement. The words "you," "your" and "yours" mean the person named on the Business Card and/or, where applicable, the Company. You have received this Business Card at the request of the Company for use in connection with the Card Account. You will be called a "Business Cardmember" or "Additional Cardmember." The Basic Cardmember is the authorizing officer of the Company who authorized us to issue the Business Card to you by signing the Company's application for the Card Account. The term "Company" means the company, corporation or firm in whose name the Business Card Account is established. *The Company, Basic Cardmember and Additional Cardmembers agree, both jointly and individually, to be bound by the terms of this Agreement.* …
>
> **Using the Card**
>
> … All amounts charged to your Account, including Purchases, Cash Advances, Balance Transfers, convenience checks, annual fee(s), if any, any amounts guaranteed by use of the Card, other fees, and any Finance Charges, are "Charges." …
>
> **Promise to Pay**
>
> You promise to pay all Charges, including Charges incurred by Additional Cardmembers, on your Account. …"

Account Agreement (emphasis added).

Utah law provides that to relieve an individual of liability based on the fact that the individual executed the document in the individual's capacity as a corporate representative, "the signer's corporate capacity must be clear from the form of signature." *DBL Distributing, Inc. v. Cache, L.L.C.*, 147 P.3d 478 (Utah App. 2006) (holding that allegation that corporate president signed corporation's credit applications in his personal capacity rather than his corporate capacity was sufficient to state a claim of personal liability). The Debtor has provided no evidence that he was named in such a way as to make clear he was named in his corporate capacity.[4] The account statements for the credit card associated with

---

[4] At the September 9 hearing, counsel for the Debtor relief upon *In re Gonzalez*, 410 B.R. 868 (Bankr. D. Az. 2009) to argue that the Debtor may not be held personally liable for the Claims. However, this Court finds *Gonzalez* to be distinguishable from the facts now before it. In *Gonzalez*, the court had before it copies of both the initial application and the subsequent agreement relating to a debtor's personal liability for use of a corporate credit card. Because of inconsistencies between the initial application and the subsequent agreement, the court found that the overall agreement between the parties was ambiguous as to the debtor's personal liability and construed the relevant terms against the credit card issuer, the drafter of the documents. *Id. at* 874.

7

Claim No. 3 identifies "James C Fairfield" as the account holder and the account statements for the credit card associated with Claim No. 4 identifies "James C Fairfield MD" as the account holder. Moreover, the language of the Account Agreement explicitly distinguishes between the person named on the credit card and the Company and states that both shall be "jointly and individually… bound by the terms of this Agreement." From this language, this Court concludes that the Debtor knew or should have known that use of the credit cards associated with each account would give rise to his personal liability. The Debtor's reliance on the fact that he executed the original agreements in his capacity as CMDA's authorizing officer does not change this analysis. The account statements for each credit card name the Debtor individually and not in his capacity as a corporate officer. As such, the terms of each Account Agreement unambiguously establish that he did "promise to pay all Charges, including Charges incurred by Additional Cardmembers, on your Account." *See Eze v. JP Morgan Chase Bank, NA*, Civ. No. 09-2722, 2010 WL 3189813, at *7 (E.D.N.Y. Aug. 11, 2010) (finding similar language in corporate credit card agreement rendered principal liable in his individual capacity); *In re Adams*, Bky. No. 03-30172, 2007 WL 1702511 (Bankr. M.D. Ala. Jun. 11, 2007) (finding that language of agreement was sufficient to create personal liability for person for whom corporate credit card was issued); *In re Garberg*, Bky. No. 05-19589, 2006 WL 1997415, at *5 (Bankr. E.D. Pa. Jun. 7, 2006). Further, whether or not the Debtor read the Account Agreements, the Debtor is charged with knowledge and acceptance of their terms, including those that expressly impose personal liability. *See In re Garberg*, Bky. No. 05-19589, 2006 WL 1997415, at *3 (Bankr. E.D. Pa. Jun. 7, 2006) (imputing knowledge of terms of credit card agreement to a debtor). Contrary to the Debtor's arguments and consistent with applicable Utah law, the fact that the Debtor did not sign the Account Agreement for each account does not preclude a finding by this Court that the Debtor was bound by their terms.

---

Here, the parties do not contend that there is any ambiguity as to the terms of the agreements governing the Debtor's obligations and this Court is not required to resolve such an issue.

**S**UMMARY

        This Court finds that American Express has established that the Debtor, James C. Fairfield, may be held personally liable pursuant to the terms of each Account Agreement for the debts in the total amount of $59,091.30 that arose from unpaid credit cards charges incurred in connection with his use of each corporate credit card maintained by Central Montgomery Dermatology Associates, LLC. For this reason, the Debtor's Objections are **DISMISSED**.

                                                                                                     B<small>Y THE</small> C<small>OURT</small>:

                                                                                                         */s/ Magdeline D. Coleman*

                                                                                 M<small>AGDELINE</small> D. C<small>OLEMAN</small>
                                                                                 U<small>NITED</small> S<small>TATES</small> B<small>ANKRUPTCY</small> J<small>UDGE</small>

Dated:  August 23, 2011

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE | : | CHAPTER 13 |
| JAMES C. FAIRFIELD, | : | |
| DEBTOR. | : | BANKRUPTCY NO. 10-10723-MDC |

# **O R D E R**

**AND NOW**, upon consideration of the objection filed by James C. Fairfield (the "Debtor") on June 17, 2010 to Proof of Claim No. 3 of American Express Bank, FSB (the "Claim 3 Objection") and the objection filed by the Debtor on June 17, 2010 to Proof of Claim No. 4 of American Express Bank, FSB (the "Claim 4 Objection," collectively with the Claim 3 Objection, the "Objections") and the Response of American Express Bank, FSB's Response thereto, and for the reasons set forth in the accompanying Memorandum,

It is hereby **ORDERED** that:

1. The Objections are dismissed.

2. Claims Number 3 and 4 are allowed in the amounts filed.

Dated: August 23, 2011

MAGDELINE D. COLEMAN
UNITED STATES BANKRUPTCY JUDGE